******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

KATHRYN G. O'TOOLE *v.* ORLANDO HERNANDEZ
(AC 37317)

Alvord, Mullins and Schaller, Js.

*Argued January 5—officially released March 8, 2016*

(Appeal from Superior Court, judicial district of
Fairfield, Frankel, J.)

*Christopher Kylin*, for the appellant (defendant).

*Joseph P. Sargent*, for the appellee (plaintiff).

*Opinion*

ALVORD, J. The defendant, Orlando Hernandez, appeals from the judgment of the trial court affirming the decision of the family support magistrate that awarded the plaintiff, Kathryn G. O'Toole, $1154.47 in attorney's fees after finding the defendant in contempt for failure to pay court ordered child support. On appeal, the defendant claims that the court's determination was erroneous because a family support magistrate has no statutory authority to award attorney's fees in contempt proceedings.[1] We affirm the judgment of the trial court.

The following facts and procedural history are relevant to the resolution of the defendant's appeal. The plaintiff and the defendant have never been married to each other. On August 30, 2010, an assistant attorney general filed a paternity petition on behalf of the state[2] with the Family Support Magistrate Division of the Superior Court, pursuant to General Statutes § 46b-162,[3] naming the defendant as the father of the parties' minor son and seeking financial support for the minor child. The action was commenced because the mother and child had received state assistance as contemplated by Title IV-D of the Social Security Act, 42 U.S.C. § 651 et seq. (2012). See also General Statutes § 17b-179 (creating Bureau of Child Support Enforcement to implement Title IV-D). Although the defendant was served in hand with the paternity petition, summons, and order for hearing, he did not appear at the scheduled hearing, and, after the evidentiary hearing on October 13, 2010, the family support magistrate, *Anthony P. Fusco*, issued by default a determination of paternity and an order of weekly child support premised on the state's wage exhibits relative to the defendant's earnings. The defendant obtained counsel and filed a motion to open the judgment and a motion for genetic testing, which were granted by the family support magistrate, *William E. Strada, Jr.*, on March 30, 2011, at which time the October 13, 2010 child support order was vacated.

On May 25, 2011, following a hearing at which the defendant was present, Magistrate Strada found the defendant to be the father of the minor child on the basis of "[the] parties' testimony and evidence in the file including DNA testing results . . . ." Magistrate Strada again entered support orders on June 22, 2011. The plaintiff, with the assistance of her counsel, thereafter filed several postjudgment motions for contempt against the defendant, claiming repeated noncompliance with the court's child support orders. On March 21, 2014, the plaintiff filed the postjudgment motion for contempt that is the subject of the present appeal. She claimed that the defendant "wilfully failed to pay child support dating back to February, 2013."[4] A hearing was held on May 1, 2014. The parties were in attendance, and the defendant received a "state appointed attorney

in the matter." Magistrate Fusco found a child support arrearage of $20,383, found the defendant in contempt and ordered that he be incarcerated until he paid a purge amount of $10,000. At that time, Magistrate Fusco additionally ordered the defendant to pay the plaintiff $1154.47 in attorney's fees within ninety days of that order.

The defendant appealed from the May 1, 2014 decision of Magistrate Fusco to the Superior Court pursuant to General Statutes § 46b-231 (n).[5] In his statement of the issues, the defendant challenged the authority of a family support magistrate to order a contemnor to pay his opponent's legal fees. He additionally claimed that the plaintiff effectively had no right to hire an attorney in a IV-D matter because she "already has access to assistance by the IV-D agency in presenting the case."[6]

Following a hearing on September 9, 2014, the trial court issued its memorandum of decision on September 17, 2014, in which it concluded that "the family support magistrate was within his statutory authority, in a paternity case, which this case is, to order attorney's fees in a motion for contempt to enforce the orders of support. Therefore, the appeal by the defendant is denied." In reaching that determination, the court relied on the language in General Statutes § 46b-171[7] as the statutory authority for the awarding of attorney's fees by Magistrate Fusco. This appeal followed.

On appeal, the defendant claims that § 46b-171 does not provide the requisite authority for the awarding of attorney's fees by a family support magistrate. The defendant further claims that there are no other statutes that do provide such authority. For that reason, the defendant argues that his due process rights were violated when Magistrate Fusco ordered him to pay the plaintiff $1154.47 in attorney's fees. The plaintiff claims, as an alternative ground for affirmance,[8] that § 46b-231 provided Magistrate Fusco with the authority to order the payment of attorney's fees when enforcing child support orders in a contempt proceeding. We agree with the plaintiff and, accordingly, affirm the judgment of the trial court on this alternative basis.[9]

The issue raised in this appeal, namely, whether a family magistrate has the statutory authority to award attorney's fees in a contempt proceeding for failure to pay child support as ordered in a child support matter, is an issue of statutory construction. "Issues of statutory construction raise questions of law, over which we exercise plenary review. . . . The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply. . . .

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent

of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case . . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Citations omitted; internal quotation marks omitted.) *Commissioner of Transportation* v. *ISIS Realty Associates Ltd. Partnership*, 121 Conn. App. 13, 18–19, 993 A.2d 491 (2010).

In the present case, the state initiated this action by filing a paternity petition with the Family Support Magistrate Division of the Superior Court seeking a determination of paternity and the establishment of support orders for the parties' minor son. The family support magistrate found that the defendant was the father of the minor child and entered child support orders. When the defendant failed to comply with the magistrate court's orders, the plaintiff filed the motion for contempt. After an evidentiary hearing, the defendant was found in contempt and, at that time, was ordered to pay a portion of the child support arrearage as a purge and further ordered to pay the plaintiff $1154.47 in attorney's fees. We therefore look to the statutes governing the Family Support Magistrate Division of the Superior Court.

"The Connecticut Family Support Magistrate's Act [act], General Statutes §§ 46b-231 through 46b-23[6], was first enacted in 1986 in response to federal legislation providing federal funds for states that complied with federal requirements for the expeditious enforcement of child support orders in cases arising under Title IV-D. See Public Acts 1986, No. 86-359; Child Support Enforcement Amendments of 1984, Pub. L. No. 98-378, 98 Stat. 1305 (1984), now codified in various sections of 42 U.S.C. §§ 651 through 675." (Internal quotation marks omitted.) *Perry* v. *Perry*, 222 Conn. 799, 806, 611 A.2d 400 (1992), overruled in part on other grounds, *Bryant* v. *Bryant*, 228 Conn. 630, 636 n.4, 637 A.2d 1111 (1994). "In compliance with the processes mandated by the federal act, the legislature, by the passage of § 46b-231 (d) created the family support magistrate division of the superior court for the purpose of the impartial administration of child and spousal support." (Internal quotation marks omitted.) Id., 807.

"The authority of family support magistrates is defined and limited by statute. Although judges of the Superior Court exercise general jurisdiction, the court

must act, in this area of the law, in a manner consistent with the statutory scheme governing the family support magistrate division of the Superior Court." *Pritchard* v. *Pritchard*, 103 Conn. App. 276, 277, 928 A.2d 566 (2007). "As a creature of statute, the family support magistrate division has only that power that has been expressly conferred on it." Id., 284. "[T]he primary role of the family support magistrate division is the enforcement of support orders . . . ." Id., 285.

In determining the powers available to the family support magistrates, we begin with the definitions provided in the act. Section 46b-231 (b) (7) defines a " '[f]amily support magistrate' " as "a person appointed as provided in subsection (f) of this section to establish and enforce child and spousal support orders . . . ." Section 46b-231 (b) (9) defines " '[l]aw' " as "both statutory and common law . . . ." Section 46b-231 (b) (14) defines " '[s]upport order' " as "a judgment, decree or order, whether temporary, final or subject to modification, issued by a court of competent jurisdiction or another state's administrative agency of competent jurisdiction, for the support and maintenance of a child, including a child who has attained the age of majority under the law of the issuing state, or of the parent with whom the child is living, which provides for monetary support, health care, arrearages or reimbursement, and which may include related costs and fees, interest and penalties, income withholding, attorneys' fees and other relief."

Other significant sections of the act include the following provisions. Section 46b-231 (c) provides: "Remedies. The remedies herein provided are in addition to and not in substitution for any other remedy." Section 46b-231 (m) lists the magistrates' "powers and duties." Section 46b-231 (m) (2) (A) provides in relevant part that "[f]amily support magistrates shall hear and determine matters involving child and spousal support in IV-D support cases . . . ." Section 46b-231 (m) (5) provides that "[p]roceedings to establish paternity in IV-D support cases shall be filed in the family support magistrate division for the judicial district where the mother or putative father resides. The matter shall be heard and determined by a family support magistrate in accordance with the provisions of chapter 815y." Section 46b-231 (m) (7) provides in relevant part: "Family support magistrates shall enforce orders for child and spousal support entered by such family support magistrate and by the Superior Court in IV-D support cases by citing an obligor for contempt. . . . A family support magistrate may determine whether or not an obligor is in contempt of the order of the Superior Court or of a family support magistrate and *may make such orders as are provided by law to enforce a support obligation* . . . ." (Emphasis added.)

Reading together the relevant provisions of the act,

it is clearly expressed that a family support magistrate may make and enforce child support orders, that he or she may find a person in contempt for failure to comply with such support orders, and that he or she may enter such orders as are provided by law necessary to enforce a support obligation. As previously defined in the act, "law" includes both statutory and common law. General Statutes § 46b-231 (b) (9). It is significant that the language of the statute does not confine the magistrate's enforcement powers to only the law as set forth in the act.

It is also instructive to look at case law that sets forth the public policy considerations in enforcing child support obligations and the remedy of contempt as a court's tool of enforcement. "The common-law duty of parents to provide for their children preceded recognition and enforcement of that duty in our statutory scheme. . . . The [parent's] duty to support . . . is a continuing obligation, which ordinarily exists even apart from any judgment or decree of support. . . . A parent has both a statutory and common law duty to support his minor children within the reasonable limits of his ability. . . . See, e.g., General Statutes § 46b-37 (b) (it shall be the joint duty of each spouse to support his or her family); General Statutes § 46b-84 (a) ([u]pon or subsequent to the . . . dissolution of any marriage or the entry of a decree of legal separation or divorce, the parents of a minor child of the marriage, shall maintain the child according to their respective abilities, if the child is in need of maintenance . . .); General Statutes § 46b-215 (a) (1) ([t]he Superior Court . . . may make and enforce orders for payment of support against any person who neglects or refuses to furnish necessary support to such person's . . . child under the age of eighteen . . . according to such person's ability to furnish such support . . .). These statutes embody the strong public policy interest of the state pertaining to matters of needed or necessary child support. It is . . . in the interest of society that the child be supported by those obligated to support the child and that the child not be required to seek public assistance to satisfy those needs unless otherwise necessary." (Emphasis omitted; internal quotation marks omitted.) *Rostad* v. *Hirsch*, 148 Conn. App. 441, 464–65 n.9, 85 A.3d 1212 (2014), appeal dismissed, 317 Conn. 290, 116 A.3d 307 (2015) (cert. improvidently granted).

Further, as stated by our Supreme Court, "[b]oth state and national policy has been, and continues to be, to ensure that all parents support their children and that children who do not live with their parents benefit from adequate and enforceable orders of child support. . . . Child support is now widely recognized as an essential component of an effective and comprehensive family income security strategy. . . . As with any income source, the effectiveness of child support in meeting the needs of children is, of necessity, increased when

payments are made regularly and without interruption." (Citations omitted; internal quotation marks omitted.) *Mulholland* v. *Mulholland*, 229 Conn. 643, 651–52, 643 A.2d 246 (1994). "Where the need for child support is established and ordered by the court, it is of the utmost importance for the welfare of the child that such payments be made in a timely fashion." (Internal quotation marks omitted.) Id., 652. Moreover, "[i]t is well settled that a [s]tate may not invidiously discriminate against illegitimate children by denying them substantial benefits accorded children generally. . . . [O]nce a [s]tate posits a judicially enforceable right on behalf of children to needed support from their natural fathers there is no constitutionally sufficient justification for denying such an essential right to a child simply because its natural father has not married its mother." (Internal quotation marks omitted.) *Walsh* v. *Jodoin*, 283 Conn. 187, 201, 925 A.2d 1086 (2007).

Given these strong public policies, this court has held that "[c]ontempt proceedings are a proper means of enforcing a court order of child support. A willful failure to pay court ordered child support as it becomes due constitutes indirect civil contempt." *Mulholland* v. *Mulholland*, 31 Conn. App. 214, 220, 624 A.2d 379 (1993), aff'd, *Mulholland* v. *Mulholland*, supra, 229 Conn. 654. "Contempt is a disobedience to the rules and orders of a court . . . ." (Internal quotation marks omitted.) *DPF Financial Holdings, LLC* v. *Lyons*, 129 Conn. App. 380, 385, 21 A.3d 834 (2011). "Sanctions for civil contempt may be either a fine or imprisonment; the fine may be remedial or it may be the means of coercing compliance with the court's order and compensating the complainant for losses sustained." (Internal quotation marks omitted.) Id.

With respect to a request for attorney's fees in a contempt proceeding, "ordinarily, courts in this country do not award attorney's fees to the prevailing party unless . . . the payment of such fees is provided for by statute. . . . The authority of the trial court to award attorney's fees following a contempt proceeding is well settled. Once a contempt has been found, [General Statutes § 52-256b (a)][10] establishes a trial court's power to sanction a noncomplying party through the award of attorney's fees. . . . The award of attorney's fees in contempt proceedings is within the discretion of the trial court." (Footnote in original; internal quotation marks omitted.) *Gina M. G.* v. *William C.*, 77 Conn. App. 582, 594–95, 823 A.2d 1274 (2003); see id., 584, 595 (mother found in contempt for violation of visitation order for minor child born out of wedlock and trial court's award of attorney's fees was reasonable to compensate father for expenses incurred in enforcing visitation order).

There are several statutes that provide authority for a Superior Court judge or a family support magistrate

to award attorney's fees in a domestic relations matter. For example, General Statutes § 46b-62 (a) provides that the court, in a dissolution action, may order either spouse or parent, in applicable proceedings, to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the criteria set forth in General Statutes § 46b-82. General Statutes § 46b-87 provides that the court may order a contemnor to pay the reasonable attorney's fees of the other party for the violation of support orders entered in a dissolution action or modification proceeding. Section 46b-171 (a) (1) (B) provides authority for a Superior Court judge or a family support magistrate to award reasonable attorney's fees in a paternity proceeding. Section 46b-215 (a) (8) (C) provides that a Superior Court judge or a family support magistrate may find a person in contempt for violation of support orders for such person's minor child and may order the contemnor to pay the reasonable attorney's fees of the other party.

Nevertheless, the defendant urges this court to conclude that the act provides no authority to a family support magistrate to award attorney's fees in contempt proceedings for the violation of child support orders. We decline to do so. First, as previously discussed, § 46b-231 (m) (7) expressly authorizes a family support magistrate to enforce child support orders entered in that court by finding the obligor in contempt, and further provides that the magistrate "may make such orders as are provided by law to enforce a support obligation . . . ." Second, it would violate the well established public policy that requires parents to provide for the support of their minor children and prohibits discriminating against children born out of wedlock to hold that support orders for children born out of wedlock cannot be enforced with the same contempt sanctions that are available tools to enforce support orders for children born to married parents. There is no justification for making such a distinction. See *Walsh* v. *Jodoin*, supra, 283 Conn. 201.

The judgment is affirmed.

In this case the other judges concurred.

[1] The defendant does not challenge the family support magistrate's finding of contempt or the reasonableness of the amount awarded as attorney's fees.

[2] The state is not a party to this appeal.

[3] General Statutes § 46b-162 provides in relevant part: "The state or any town interested in the support of a child born out of wedlock may, if the mother neglects to bring such petition, institute such proceedings against the person accused of begetting the child, and may take up and pursue any petition commenced by the mother for the maintenance of the child, if she fails to prosecute to final judgment. . . ."

[4] The defendant has an associate's degree in architecture, graduated from Bayonne University with a degree in construction science, and has a master's degree from the University of Connecticut.

[5] General Statutes § 46b-231 (n) provides in relevant part: "(1) A person who is aggrieved by a final decision of a family support magistrate is entitled to judicial review by way of appeal under this section.

"(2) Proceedings for such appeal shall be instituted by filing a petition in superior court for the judicial district in which the decision of the family support magistrate was rendered not later than fourteen days after filing of

the final decision with an assistant clerk assigned to the Family Support Magistrate Division . . . . In a IV-D support case, such petitions shall be accompanied by a certification that copies of the petition have been served upon the IV-D agency as defined in subsection (b) of this section and all parties of record. . . .

"(6) The appeal shall be conducted by the Superior Court without a jury and shall be confined to the record and such additional evidence as the Superior Court has permitted to be introduced. The Superior Court, upon request, shall hear oral argument and receive written briefs.

"(7) The Superior Court may affirm the decision of the family support magistrate or remand the case for further proceedings. The Superior Court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the decision of the family support magistrate is: (A) In violation of constitutional or statutory provisions; (B) in excess of the statutory authority of the family support magistrate; (C) made upon unlawful procedure; (D) affected by other error of law; (E) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. . . ."

[6] The trial court concluded that "[t]here is no restriction on the representation of counsel by parties involved in IV-D matters. The plaintiff was well within her rights to hire counsel to represent her in these proceedings." The defendant has not challenged the court's determination on that issue in this appeal.

[7] General Statutes § 46b-171 (a) provides in relevant part: "(1) (A) If the defendant is found to be the father of the child, the court or family support magistrate shall order the defendant to stand charged with the support and maintenance of such child, with the assistance of the mother if such mother is financially able . . . .

"(B) The court or family support magistrate shall order the defendant to pay such sum to the complainant, or, if a town or the state has paid such expense, to the town or the state, as the case may be, and shall grant execution for the same and costs of suit taxed as in other civil actions, together with a reasonable attorney's fee . . . .

"(6) Failure of the defendant to obey any order for support made under this section may be punished as for contempt of court and the costs of commitment of any person imprisoned therefor shall be paid by the state as in criminal cases."

[8] Pursuant to Practice Book § 63-4 (a) (1), the plaintiff filed a preliminary statement of the issues that indicated that she wished to present for review the following alternative ground upon which the judgment could be affirmed: "Whether General Statutes § 46b-231 (b) provides authority for a Family Support Magistrate to order the payment of attorney's fees and costs when enforcing child support orders in a contempt proceeding?" The statement was filed prior to the filing of the defendant's appellate brief. The plaintiff briefed this alternative ground in her appellate brief. The defendant's counsel declined to file a reply brief.

[9] "[I]t is axiomatic that [w]e may affirm a proper result of the trial court for a different reason." (Internal quotation marks omitted.) *Rafalko* v. *University of New Haven*, 129 Conn. App. 44, 51 n.3, 19 A.3d 215 (2011).

[10] General Statutes § 52-256b (a) provides: "When any person is found in contempt of any order or judgment of the Superior Court, the court may award to the petitioner a reasonable attorney's fee and the fees of the officer serving the contempt citation, such sums to be paid by the person found in contempt." See *Gina M. G.* v. *William C.*, 77 Conn. App. 582, 594 n.9, 823 A.2d 1274 (2003).